KING, C.J.,
 

 for the Court;
 

 ¶ 1. Darrell Craig was convicted in the Circuit Court of Amite County of armed robbery and sentenced to thirty years in the custody the Mississippi Department of Corrections (MDOC). He appeals raising the following issues; (1) the circuit court erred in denying his motion to dismiss for failure to grant a speedy trial based on the violation of his statutory right to a speedy trial; (2) the circuit court erred in admitting into evidence a DNA report, which was first produced to Craig two days before trial; (3) the circuit court erred in allowing into evidence testimony based upon the subject DNA report when the State’s witness was not qualified to testify as an expert witness; (4) the circuit court erred in admitting into evidence articles of clothing and firearms when the State failed to establish a proper chain of custody for the items; and (5) the circuit court denied his right to a fair and impartial jury by striking two African American jurors. Finding no error, we affirm the judgment of the circuit court.
 

 FACTS
 

 ¶ 2. On December 12, 2006, four individuals entered Trustmark Bank in Gloster, Amite County, Mississippi, and robbed Lacey Taylor and other bank employees. Testimony indicated that after the robbers fled the scene of the robbery, large quantities of money were found discarded along Main Street in Gloster. Officers in pursuit of the robbers found several items of clothing discarded along Highway 33, the direction in which the robbers allegedly traveled after the robbery. Later that afternoon on Macedonia Road in Gloster, officers found an abandoned, burning SUV, which was later identified as the getaway car. At the site, officers also found a pair of tennis shoes and a boot near the burning vehicle and three guns in the embankment not far from the vehicle. Officer Danny Mauex testified that the clothing retrieved from Highway 33, the guns retrieved from the embankment, and the shoes retrieved from the burn site were placed in evidence bags and turned over to Chief Tommy Lee of the Gloster Police Department. Chief Lee testified that he placed the evidence bags in the vault and the guns in the evidence locker.
 

 ¶ 3. On August 24, 2007, Craig, Warren Williams, Dameon Washington, Eric Robertson, Derrick Tobias, and Neffeti A. Oshunremi were indicted under Mississippi Code Annotated section 97-37-37 (Supp. 2009) for armed robbery with an enhanced punishment for use of a firearm during the commission of a felony. On September 19,
 
 *704
 
 2008, Craig was convicted of armed robbery. Craig was sentenced to thirty years in the custody of the MDOC on September 22, 2008. On September 29, 2008, Craig filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. The circuit court denied Craig’s motion on May 18, 2009. Craig timely filed his notice of appeal.
 

 ANALYSIS
 

 I. Speedy Trial
 

 ¶ 4. Craig asserts that he was not afforded a speedy trial pursuant to Mississippi Code Annotated section 99-17-1 (Rev.2007). Craig claims that he went to trial on September 18, 2008, 362 days after he was arraigned on September 21, 2008. Craig claims that this lengthy delay in going to trial precluded his obtaining records from his bonding agent, which would have established his whereabouts on the day before the crime occurred. Craig maintains that he effectively asserted his right to a speedy trial by filing no motions for continuance, by not objecting to the State’s request for a body search, and by voluntarily submitting DNA samples at the State’s request.
 

 ¶ 5. According to
 
 DeLoach v. State,
 
 722 So.2d 512, 516 (¶ 12) (Miss.1998):
 

 Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court’s standard of review, this Court will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court’s finding of good cause, this Court will ordinarily reverse. The [S]tate bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion.
 

 (Internal citations omitted).
 

 ¶ 6. Pursuant to Mississippi Code Annotated section 99-17-1, the defendant shall be tried no later than 270 days after the date of arraignment. Craig was arraigned on September 21, 2007, and went to trial on September 18, 2008. On September 15, 2008, the trial court conducted a hearing on Craig’s motion to dismiss. As a result of the hearing, the trial court found that the time period from arraignment to trial exceeded 270 days. The trial court noted that the delay resulted from older cases being scheduled for trial. The trial judge ruled that such delay was sufficient under the law for good cause and the matter would not be dismissed.
 

 ¶ 7. The United States Supreme Court established a balancing test to determine whether a defendant’s constitutional right to a speedy trial has been violated.
 
 Barker v. Wingo,
 
 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors that are to be considered together and balanced are: “(1) length of delay, (2) reason for delay, (3) the defendant’s assertion of his right, and (4) prejudice to the defendant.”
 
 Id.
 
 at 530-32, 92 S.Ct. 2182;
 
 White v. State,
 
 969 So.2d 72, 78 (¶ 14) (Miss.Ct.App.2007). In reviewing the allegation that Craig’s statutory speedy-trial right was violated, we apply the same balancing analysis used to address the violation of a constitutional right to a speedy trial.
 

 A. Length of Delay
 

 ¶ 8. According to the
 
 Barker
 
 analysis, “[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.”
 
 Barker,
 
 407 U.S. at 530, 92 S.Ct. 2182. The time from Craig’s arraignment to his trial was 362 days. This exceeds the statutorily mandated 270 days
 
 *705
 
 by 92 days and is presumptively prejudicial.
 

 B.Reason for Delay
 

 ¶ 9. “Once a delay is found to be presumptively prejudicial, the burden of proof shifts to the State to show cause for the delay.”
 
 Stark v. State,
 
 911 So.2d 447, 450 (¶ 11) (Miss.2005). The appellate court must determine whether the delay should be charged to the State or the defendant.
 
 Id.
 
 Since it is the State’s responsibility to provide a defendant with a speedy trial, this factor is weighed against the State unless it can show either that the delay was caused by the defendant or that the delay was for a good cause.
 
 Id.; Wiley v. State,
 
 582 So.2d 1008, 1012 (Miss.1991). In this case, the delay was caused by an overcrowded docket with older, previously scheduled cases being tried before Craig’s case. This factor only slightly favors Craig because of the acceptable justification for the delay.
 

 C.Assertion of the Right to a Speedy Trial
 

 ¶ 10. Craig claims he asserted his right to a speedy trial by not filing any motions for continuances, not objecting to the State’s request for a body search, voluntarily submitting DNA samples at the State’s request, and filing a motion to dismiss all of the charges. While it is the State’s burden to bring an accused to trial, a defendant’s failure to assert his right to a speedy trial must be weighed against him.
 
 Stark,
 
 911 So.2d at 452 (¶ 26). The assertion of the right to a speedy trial is an active assertion, not passive. In this case, Craig did not actively assert his right to a speedy trial. Therefore, this factor weighs in favor of the State.
 

 D.Prejudice to the Defendant
 

 ¶ 11. Craig argues that he was prevented from obtaining evidence of his absence from the State of Mississippi at the time of the robbery; therefore, he argues he was prejudiced in the presentation of his defense. Craig stated that he was in Houston, Texas, at the time of the robbery. Craig asserts that this matter was discussed with his bail agent; however, because the agent only maintained office records of visits for a two-year period, the record of Craig’s presence in Houston at that time was not available.
 

 ¶ 12. In considering whether a defendant was prejudiced by the delay, this Court looks at the three elements that a speedy trial is intended to address: “(1) the prevention of oppressive pre-trial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) limiting the possibility the defense will be impaired.”
 
 Oliver v. State,
 
 20 So.3d 16, 23 (¶ 21) (Miss.Ct.App.2009) (citing
 
 Wiley,
 
 582 So.2d at 1012).
 

 ¶ 13. In this ease, Craig claims that his defense was impaired. Craig claims the documents needed to prove he was in Houston and not in Gloster at the time the crime was committed were destroyed. Assuming the existence of these documents, we find it was Craig’s responsibility to seek their timely retention and preservation. In the absence of a timely effort by Craig to preserve the documents, we do not see that he was prejudiced by the delay. Thus, we find that this factor weighs in favor of the State.
 

 ¶ 14. This assignment of error is without merit.
 

 II. Admission of a DNA report
 

 ¶ 15. On Friday, September 12, 2008, the State received oral notice from Scales Laboratory in Brandon, Mississippi, that the DNA profile from the boot matched Craig. At that time, the State
 
 *706
 
 requested a written report. The State advised the defense orally on Monday, September 15, 2008, of the DNA report during a hearing on Craig’s motion to dismiss the case due to the violation of his statutory right to a speedy trial. On Tuesday, September 16, 2008, at 10:00 a.m., the State provided a copy of the written DNA report to the defense. Thereafter, Craig filed a motion in limine to exclude the DNA evidence. In his motion in limine, Craig specifically stated that he did not wish to delay the trial of this matter further, but merely to have the report excluded.
 

 ¶ 16. At trial, Craig objected to the introduction of the DNA report for the following reasons: (1) the report was not produced to defense counsel in sufficient time prior to trial in order to adequately dispute the validity and substance of the report; (2) statements in the report regarding the analysis tend to invite speculation, conjecture, and guesswork; (3) the State could not properly authenticate the document as required by Rules 901 and 902 of the Mississippi Rules of Evidence; (4) the report was inadmissible hearsay, which is prohibited by Rules 801 and 802 of the Mississippi Rules of Evidence; (5) the State could not authenticate the chain of custody for the boot; (6) the probative value of the evidence contained in the report was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the danger of causing the jury to return a possible conviction based upon speculation and guesswork; and (7) the report was untimely received by the defense.
 

 ¶ 17. On appeal, Craig argues that the State waited almost two years to produce a DNA report even though it had possession of or access to the evidence from which the DNA sample was collected. Craig contends that the State’s failure to produce discovery in a timely manner resulted in his not securing a forensic expert witness in a timely manner in order to rebut the testimony offered by the State’s witness. Craig claims that the untimely receipt of the DNA report forced him to give up his Fifth Amendment right to avoid self-incrimination and testify at trial in order to explain Kathryn Moyse’s testimony.
 

 ¶ 18. When confronted with an alleged discovery violation, this Court looks to Rule 9.04(1) of the Uniform Rules Circuit and County Court. Rule 9.04(1) states that:
 

 If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
 

 However, “[t]he trial court is allowed to exclude evidence where discovery violations are ‘willful or motivated by the desire to gain a tactical advantage.’ ”
 
 McGregory v. State,
 
 979 So.2d 12, 17 (¶8) (Miss.Ct.App.2008). According to
 
 Parker v. State,
 
 20 So.3d 702, 708 (¶23) (Miss.Ct.App.2009), “[i]f a defendant who has been surprised by undisclosed discoverable evidence does not request a continuance at the time of such surprise, he waives this issue on appeal.” (Quoting
 
 Hughery v. State,
 
 799 So.2d 105, 116 (¶ 12) (Miss.Ct.App.2001)).
 

 ¶ 19. While Craig claims that the State’s failure to timely provide the DNA report forced him to give up his Fifth Amendment right to avoid self-incrimination, Craig stated that he did not want a continuance, but merely to have the DNA evidence excluded. The failure to request a continuance is a waiver, thus making this
 
 *707
 
 issue procedurally barred from being raised on appeal.
 
 Id.
 
 at 707-08 (¶ 28).
 

 ¶ 20. Notwithstanding the procedural bar, we find that the decision of the trial court was harmless error. The record indicated that the boot was sent to DNA Security Laboratory in Burlington, North Carolina, for analysis on October 10, 2007, and thereafter returned to Scales Laboratory. On January 23, 2008, the boot and buccal swabs taken from Craig were delivered to Scales Laboratory for comparative analysis. Moyse, forensic DNA analyst for Scales Laboratory, testified that the comparative analysis did not begin until August 20, 2008, and was completed on August 25, 2008. The final report was delivered orally to the State on September 15, 2008. The record contained no explanation for the delay in completing the analysis especially when Moyse testified that a DNA analysis could be completed in one to two weeks. Despite the length of time required to process the samples and complete a report, there was no indication that the State’s delay in providing the DNA report was willful or motivated by the desire to gain a tactical advantage.
 

 ¶ 21. Moreover, prior to the testimony of the State’s DNA expert witness, Moyse, the trial judge conducted a hearing outside the presence of the jury to address the defense’s motion in limine to exclude the DNA report. At the conclusion of the hearing, the trial court denied Craig’s motion in limine to have the report excluded citing the following reasons: (1) although it was through previous counsel, the defense was aware of some potential DNA evidence at least no later than January 2008, when the trial court ordered DNA samples to be taken from the defendant; and (2) the State was not advised until Friday, September 12, 2008, that there was a match of a DNA sample from the boot to Craig. The trial court also noted that while the report was received shortly before trial, the State did not fail to disclose the results of the report in a timely manner. Thus, this issue is without merit.
 

 III. State’s Expert Witness
 

 ¶ 22. Craig contends that the trial court erred in allowing Moyse to testify regarding the DNA report when her testimony was speculative and amounted to mere guesswork. Craig asserts Moyse’s analysis was wholly unreliable because she could not conclusively testify that Craig was a 100% match to the mixture found inside the boot. Craig claims that Moyse was allowed to read the DNA report into the trial record. Moyse was allowed to read the following into the record:
 

 DNA analysis of the boot yielded a partial DNA profile indicative of a mixture containing DNA from more than one individual. The suspect, Darrell Craig, cannot be excluded as being a contributor to this mixture profile. The probability of excluding a random individual from this mixture profile is 99.99%. The suspects Derrick Tobias and Warren Williams are excluded from as being contributors.
 

 Craig asserts that because the report did not identify any other suspects and/or individuals who were the source of the mixture used in the subject analysis, did not identify a measurable amount of the mixture extracted from the boot, and did not identify the methodology used in her analysis, Moyse invited the jury to assume Craig’s guilt and attempted to relieve the State of its required burden of proof.
 

 ¶ 23. “The trial court has discretion in determining whether an expert is qualified to testify. This Court should not reverse the trial court’s ruling unless it can be shown that the trial judge abused his discretion or that the expert was clear
 
 *708
 
 ly not qualified.”
 
 Baldwin v. State,
 
 757 So.2d 227, 230-31 (¶ 11) (Miss.2000) (internal citations omitted). Generally, on a challenge to the admissibility of DNA evidence, a trial court will conduct a hearing pursuant to supreme court decision in
 
 Hughes v. State,
 
 892 So.2d 203, 210 (¶ 13) (Miss.2004). Under the test adopted in
 
 Polk v. State,
 
 612 So.2d 381 (Miss.1992), the Court should ask: (1) whether there was “a theory generally accepted in the scientific community which supports the conclusion that DNA testing can produce reliable results,” (2) whether there “are current techniques capable of producing reliable results in DNA identification and that are generally accepted in the scientific community,” and (3) whether “the testing laboratory perform[ed] generally accepted scientific techniques without error in the performance or interpretation of the tests.”
 
 Hughes,
 
 892 So.2d at 210 (¶ 13).
 

 ¶ 24. The trial court conducted a hearing outside the presence of the jury regarding the qualification of Moyse as an expert witness. Both the State and defense were allowed to voir dire Moyse. The trial court also questioned Moyse regarding the accepted standards of DNA testing and the procedures she used in the DNA extraction and analysis. After the State conducts its voir dire of Moyse, the State tendered her as an expert, and the defense reserved its questions for cross-examination. The trial court accepted the expert in the field tendered by virtue of education, experience, training, and knowledge. The defense neither objected nor cross-examined Moyse as to her ability to testify as an expert witness, but the defense objected to Moyse’s testimony mainly on its credibility. The admission and exclusion of expert testimony are within the sound discretion of the trial court.
 
 Funderburk v. Johnson,
 
 935 So.2d 1084, 1107 (¶ 71) (Miss.Ct.App.2006). “As the gatekeeper, the trial court must ascertain that the proffered testimony is both relevant and reliable, that is, that the testimony will assist the trier of fact.”
 
 Id.
 
 “The reliability analysis must focus on the ‘principles and methodology” underlying an expert opinion, not on the conclusions generated.”
 
 Id.
 
 (citation omitted). However, once this has been established, the credibility of the expert witness’s opinion is left to the jury.
 
 Id.
 

 ¶ 25. At the conclusion of the hearing, the trial court opined on the uniqueness of this situation in which the analyst who analyzed the boot in Burlington was also the analyst who analyzed the swabs here in Mississippi; thus, it was like two witnesses in one. The trial court indicated that from Moyse’s testimony, there was no sign of any tampering with the evidence, and a chain of custody had been established. As a result, the trial court held that there was clearly evidence of reliability. The trial judge held that because Moyse was the analyst who did both extractions of the samples in question, and the method of analysis was a standard DNA analysis, the witness could testify.
 

 ¶ 26. We find no merit to Craig’s argument that the evidence was not reliable, since Moyse could not conclusively testify that Craig was a 100% match to the mixture. Moyse testified that her analysis of the boot indicated that there was DNA from other people found in the boot; however, in cases where there is more than one individual in a genetic profile, an exclusion-probability calculation is conducted. Moyse stated that the exclusion-probability calculation allows the analyst to calculate the chances of taking a random individual and excluding them from the mixture. Moyse noted that 99.99% of the time when a random individual is compared to the DNA mixture, the DNA will not match, and the individual is excluded.
 
 *709
 
 In this case, Craig’s genetic profile was found in the DNA mixture and could not be excluded. In addition, during the defense’s case-in-chief, Craig acknowledged that he owned the boot. Craig testified that when he evacuated New Orleans, Louisiana, during Hurricane Katrina, he took jeans, t-shirts, tennis shoes, and the boots from which the DNA was extracted. Craig stated that he had the boots when he went to live with Tobias at the Tobias’s mother’s home. When he left and moved to LaPlace, Louisiana, and then subsequently to Houston, Texas, he left the boots behind. The record indicates that only one of the boots that Craig had left behind was found at the crime scene and later processed for analysis. Moyse’s testimony that there was DNA from others on the boot and Craig’s testimony that he was not in possession of the boots after leaving LaPlace would be questions for the jury to decide.
 

 IV. Chain of Custody
 

 ¶ 27. Craig contends that it was undisputed that the State failed to establish and authenticate the original chain of custody regarding the articles of clothing admitted into evidence. Craig asserts that no law-enforcement officer or official testified that the articles of clothes were properly bagged and the bags labeled at the time the clothing was collected. Craig claims that the seizing officer could not testify as to where the bags were taken once sealed.
 

 ¶ 28. “A trial court is given great discretion when determining whether the State has established a proper evi-dentiary chain of custody.”
 
 Vaughn v. State,
 
 972 So.2d 56, 61 (¶ 20) (Miss.Ct.App.2008). “[T]he supreme court has never required a production of every person who handled the object or an accounting of every moment in order to establish proper chain of custody.”
 
 Cooley v. State,
 
 14 So.3d 63, 65 (¶ 10) (Miss.Ct.App.2008) (citations omitted).
 

 ¶ 29. The proper test to determine whether or not there has been a showing of the proper chain of custody of the evidence is whether there is a reasonable inference of likely tampering with the evidence.
 
 Butler v. State,
 
 592 So.2d 983, 985 (Miss.1991). The State must prove that there is no reasonable inference of tampering with evidence.
 
 Id.
 
 However, the defendant has the burden of producing evidence that the chain of custody has been broken.
 
 Fulks v. State,
 
 944 So.2d 79, 83 (¶ 8) (Miss.Ct.App.2006). “Proof of the chain of custody is intended to satisfy the fact-finder of the identity and validity of the evidence. Without doubts being raised, a break in the chain does not bar introduction.”
 
 Shaw v. State,
 
 915 So.2d 442, 447 (¶ 15) (Miss.2005) (citations omitted).
 

 ¶ 30. During trial, Officer Lester Lambert testified that once he heard dispatch announce the direction in which the suspects were seen traveling, he traveled right on Highway 33 North toward Homo-chitto Road in pursuit of the suspects. While traveling in that direction he noticed several articles of clothing in the middle of the road and on the edge of the road. He immediately called Officer Danny Mauex to bring evidence bags. Officer Mauex testified that when he arrived at the scene, he and Officer Lambert retrieved the items of clothing from the roadway and placed them in evidence bags. Officer Mauex stated that once he received the items of clothing as well as the items from the second scene where the burning vehicle was found, he turned the evidence bags and guns over to Chief Lee.
 

 ¶ 31. Chief Lee testified that when he received the bags from Officer Mauex’s possession, all the bags were closed. Chief Lee stated that he placed the bags,
 
 *710
 
 without opening and examining the contents, in the evidence locker and the guns in the vault. Officer Gerald Wall later testified that he obtained the sealed evidence bags from Chief Lee on January 3, 2007, for transport to the Mississippi Crime Laboratory. Officer Wall stated that Chief Lee retrieved the evidence bags from the evidence locker and guns
 
 from
 
 the vault. Officer Wall testified that he had personal knowledge of the items contained in each of the evidence bags because once he delivered the evidence to the crime lab, he had to remove each item from all the bags in order for processing at the crime lab. Officer Wall identified the items as clothing that had been picked up on the side of the road on Highway 33 and at the burn site. Officer Wall also indicated that he returned the clothing back to the Gloster Police Department because the crime lab would not accept the clothing since there was nothing with which to compare it. Officer John Stoll then testified that he took both the items of clothing from the vault at the Gloster Police Department and the items from the crime lab to Scales Laboratory in Brandon. Each of these officers indicated that when they retrieved the evidence from its point of origination and delivered to the point of destination there was no evidence of tampering. In addition, the State’s expert witness, Moyse, testified that when she received the boot in Burlington, via FedEx, there was no indication of tampering.
 

 ¶ 32. The trial court overruled Craig’s objection to the admission of the clothing and one handgun. The clothing and a handgun with a broken stock and ammunition were introduced as a composite exhibit; however, another handgun and part of a burned-out weapon were marked for identification purposes only. As previously stated, the production of every person, who handled the evidence at every moment is not required to establish a chain of custody. However, in this case, the testimony of the officers indicated that there was an accounting of every person who had handled the evidence at every moment of the investigation and its analysis. In addition, Craig failed to produce any evidence that suggested there had been any tampering with the evidence. Therefore, this issue is without merit.
 

 Y. Fair and Impartial Jury
 

 ¶ 33. Craig claims that two African American jurors were struck after his grandmother, who had vision problems, sat beside the two jurors during lunch, even though nothing was said, and no words were exchanged. Craig argues that the trial court acted outside of its discretion in striking the jurors, even after the jurors admitted to the court that they could remain fair and impartial throughout the duration of the trial.
 

 ¶ 34. Deciding to dismiss a juror for good cause and subsequently replacing that juror with an alternate is completely within the trial court’s discretion. Stevens
 
 v. State,
 
 513 So.2d 603, 604 (Miss.1987);
 
 see Myers v. State, 565
 
 So.2d 554, 557 (Miss.1990). The Mississippi Supreme Court has made it clear that the trial court does not have the authority to remove and replace jurors arbitrarily; the supreme court has suggested that the trial court articulate into the record the exact reasons for excusing a juror.
 
 Myers,
 
 565 So.2d at 557-58;
 
 Stevens,
 
 513 So.2d at 605.
 

 ¶ 35. In this case, on the first day of trial after the jury had been empaneled, the sheriff, other law-enforcement personnel, and one of the State’s attorneys saw jurors Patricia Martin and Odessia Ross sitting at a picnic table outside the courthouse having lunch with family members and witnesses for the defendant. The family members and witnesses included
 
 *711
 
 Craig’s girlfriend, mother, and grandmother. The trial court was informed of the conversation; however, because those who witnessed it could not identify the jurors by name, the trial court proceeded with opening statements and the State’s casein-chief. After opening statements and the testimony from two of the State’s witnesses, the trial court recessed to address the matter regarding the jurors’ communication with the defendant’s family members. When questioned by the trial judge, the jurors indicated that they were sitting having lunch when defense witnesses came to the picnic table and sat down. The jurors indicated that their discussion was not in regard to the ease but about their church affiliation. Each of the jurors also indicated that she had her juror’s badge on at that time. After taking into consideration the communication between the jurors and family members, the trial judge dismissed the jurors and replaced them with the alternates. The court reasoned that although the jurors were told not to talk to anyone regarding the case, the family members, who were aware that Martin and Ross were jurors, sat down and began talking with the jurors. The trial judge opined that although he did not believe anything improper took place, the parties and witnesses were informed that they were not to mix or communicate with jurors and vice versa.
 

 ¶ 36. The trial judge articulated in the record that the reason for excusing the jurors and replacing them with alternates was because family members sat down and befriended jurors, when the members of the family as well as the jurors had been clearly instructed not to communicate with one another. Craig objected to the trial court’s decision. However, there was no indication in the record that the trial court abused its discretion. Therefore, this issue is without merit.
 

 ¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF AMITE COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.