CARLTON, J.,
for the Court:
¶ 1. Brandon Bunch appeals the judgment of the Wayne County Circuit Court that convicted him of five counts of automobile burglary and sentenced him as a habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC).
¶ 2. On appeal, Bunch raises the following issues:
(1) he was denied due process during voir dire by the trial court only allotting him ten minutes for jury selection and was prejudiced by not being allowed the twelve peremptory challenges as required by Mississippi Rule of Circuit and County Court 10.01;
(2) he was denied his fundamental right to a fair trial and was prejudiced by the court in allowing jury members [who] were friends of the victims [to remain on the panel];
(3) he was denied due process and his fundamental right to a fair trial and was prejudiced by the trial court allowing the State to appoint an “expert witness” to operate and control the computer used to display the surveillance videos;
(4) the trial court erred in allowing the State to select certain portions of the surveillance videos for viewing by the jury to the exclusion of all other portions of the videos[,] violating Mississippi Rule of Evidence 106;
(5) the trial court erred in allowing ... inadmissible hearsay evidence and violated his Sixth Amendment rights by allowing evidence to be admitted that *489 [could not] be cross[-]examined[,] which violates the Confrontation Clause; he was also denied his fundamental right to a fair trial due to prosecutorial misconduct and by the court allowing witnesses to testify [about] videos that had not been entered into evidence;
(6) the trial court erred in allowing witnesses to testify who did not have personal knowledge^] in violation of Mississippi Rule of Evidence 602;
(7) the State failed to prove all of the elements of the crime of automobile burglary in its five[-]count indictment; therefore, the trial court erred in denying the motion for [a] judgment notwithstanding the verdict (JNOV), or in the alternative, ... a new trial; consequently, the verdicts of guilty were against the overwhelming weight of the evidence;
(8) the trial court erred in sentencing him as a habitual offender under Mississippi Code Annotated section 99-19-88 [ (Rev.2007) ] because he had not served separate terms of one year or more in any state or federal penal institution] as required by statute;
(9) his sentences constitute cruel and unusual [punishment] in violation of the Eighth Amendment of the United States Constitution;
(10) his life sentence is disproportionate in light of his crimes; and
(11) the trial court erred by the delay between the modification of probation, arrest, and the date of his final revocation hearing.
¶ 3. After reviewing the record, we find no error and affirm.
PROCEDURAL HISTORY
¶4. A grand jury before the Wayne County Circuit Court indicted Bunch on five counts of automobile burglary under Mississippi Code Annotated section 97-17-38 (Rev.2006)[1] as follows:
(1) on October 31, 2010, Bunch burglarized Tina Foster’s vehicle;
(2) between October 30, 2010, and November 1, 2010, Bunch burglarized Jonathan Tullos’s vehicle;
(3) on November 3, 2010, Bunch burglarized Katie Odom’s vehicle;
(4) between November 3, 2010, and November 4, 2010, Bunch burglarized Mike and Carolyn Powe’s vehicle; and
(5) on November 4, 2010, Bunch burglarized Rhonda Pierce’s vehicle.
¶ 5. Bunch’s trial commenced on January 9, 2012, and at the conclusion of the trial, a jury found Bunch guilty of all five counts of automobile burglary. Following a sentencing hearing, the trial court found Bunch to be a habitual offender under Mississippi Code Annotated section 99-19-83 and sentenced him to life imprisonment on all five counts, to be served concurrently with each other, and to be served consecutively to a previous sentence in an unrelated cause number.
¶ 6. Bunch appeals his convictions and sentences.
FACTS
¶ 7. Tullos testified that he worked as a paramedic at Wayne General Hospital. Tullos stated that during one of his shifts, he went outside and discovered that his vehicle had been burglarized. Tullos testi- *490 fled that this occurred sometime between October 30, 2010, and November 1, 2010. Tullos found a hole in the glass of the vehicle’s window and his vehicle’s stereo system stolen.
¶8. Between the end of October 2010 and the beginning of November 2010, Foster had her vehicle burglarized while parked in a parking lot at Wal-Mart. Foster was not driving her vehicle that night, but instead allowed her friend Maurice Mayfield to drive her car to Wal-Mart. Mayfield informed Foster that someone had burglarized her vehicle and that the vehicle’s stereo system was stolen. Foster met Mayfield in town, and he explained to her that he went into Wal-Mart for ten minutes, and he returned to find her vehicle burglarized.
¶ 9. On November 3, 2010, Odom parked her vehicle in the visitor’s parking lot at Wayne General Hospital, left the vehicle unlocked, and went inside the hospital to visit a friend. While inside, someone burglarized her vehicle and stole her purse from the vehicle.
¶ 10. Pierce worked for Wal-Mart. On November 3, 2010, Pierce parked her vehicle in a parking lot on the side of Wal-Mart and went into the store to start her shift. Upon her return to the vehicle, she noticed that someone had broken her vehicle’s passenger window and stolen her bag from the car.
¶ 11. On the morning of November 4, 2010, Wayne General Hospital security officer Paul Walley was operating the security system at the hospital when he observed an individual in the parking lot who appeared to be looking into the windows of various cars. Walley followed the individual on camera before exiting the hospital tó confront the individual. Upon arriving in the parking lot, Walley confronted and detained the suspicious individual, who was later identified as Bunch. Walley noticed blood streaming from Bunch’s wrists. Walley detained Bunch until Officer Fred Daniels with the Waynesboro Police Department arrived and placed Bunch under arrest. After examining other vehicles in the parking lot, Walley found a burglarized vehicle that belonged to Powe. Powe testified that she had parked her vehicle and entered Wayne General Hospital to visit her husband, who was hospitalized. Security later located her in the hospital and informed her that someone had burglarized her vehicle. The vehicle’s window had been broken, and the vehicle’s stereo system stolen.
¶ 12. The State, in its case-in-chief, admitted into evidence copies of the footage from the surveillance videos of the five automobile burglaries that occurred in the parking lots of Wal-Mart and Wayne General Hospital. Due to the large amount of footage on the surveillance videos, the State played only those portions of the videos that showed activity relating to the burglaries of the automobiles. The trial court gave Bunch the opportunity to present any other portions of the video footage he deemed relevant. Bunch, however, chose to rest his case without introducing any of the video footage.
¶ 13. The facts in the record regarding the authentication of the video footage reflect that witnesses familiar with the contents authenticated it, thereby allowing its admission into evidence. Tim Napp, the assistant manager at Wal-Mart, testified that he acted as the custodian of the surveillance-video equipment for Wal-Mart. Napp’s co-employee provided copies of Wal-Mart’s surveillance footage to law enforcement, as requested by Officer Wesley Waites with the Waynesboro Police Department. Napp testified that Wal-Mart kept the surveillance videos for security purposes in the normal course of Wal-Mart’s business of operating the store. *491 Napp testified that the copies presented to him at trial fairly and accurately depicted what was on the original footage.
¶ 14. Similarly, Robert Slay, the IT director at Wayne General Hospital, testified that he operated and maintained the security system at Wayne General Hospital and acted as custodian of the surveillance-video equipment. Acting on a request from hospital administration, Slay retrieved copies of the surveillance footage of the parking lots in areas around the hospital. Slay testified that the videos presented to him at trial accurately depicted what he saw when he reviewed the original surveillance footage. Slay testified that in reviewing the surveillance videos pertaining to the automobile burglaries that occurred at Wayne General Hospital, he noticed a dark-colored Ford pickup in all of the surveillance videos. Slay narrated the surveillance videos of the automobile burglaries that occurred at Wayne General Hospital as the State published the videos to the jury. Slay later assisted in the operation of the video equipment as the State published to the jury the surveillance videos from the automobile burglaries that occurred at Wal-Mart.
DISCUSSION
I. VOIR DIRE
¶ 15. Bunch argues that the trial court erred in only allotting defense counsel ten minutes for jury selection and in treating him with bias. Bunch also argues that the trial court erred in allowing him less than the twelve peremptory challenges required by Rule 10.01 of the Mississippi Uniform Rules of Circuit and County Court. Lastly, Bunch argues that the trial court erred by allowing the victims’ friends, neighbors, and fellow church members to remain on the jury panel.
¶ 16. The record reflects no objections by defense counsel at trial as to the alleged time constraints during jury selection or as to any alleged bias by the trial court. Further, the record shows that defense counsel raised no requests for additional time during the jury-selection process. As noted by the Mississippi Supreme Court numerous times, “any claim is waived for failure to raise a contemporaneous objection.” Williams v. State, 98 So.3d 468, 474 (¶25) (Miss.Ct.App.2012).
¶ 17. Procedural bar notwithstanding, we find no merit to Bunch’s claims. While Bunch argues he was entitled to twelve peremptory challenges, we find that the law provides to the contrary. Rule 10.01 provides:
In cases wherein the punishment may be death or life imprisonment, the defendant and the prosecution shall have twelve (12) peremptory challenges for the selection of the regular twelve jurors. These challenges may not be used in the selection of an alternate juror or jurors.
In felony cases not involving the possible sentence of death or life imprisonment, the defendant and the prosecution shall have six (6) peremptory challenges for the selection of the twelve regular jurors. These challenges may not be used in the selection of an alternate juror or jurors.
Bunch’s indictment charged him with five counts of automobile burglary, which is not an offense for which one is entitled to twelve peremptory challenges. The rule providing a defendant with additional peremptory challenges only applies to trials involving convictions for capital offenses. See Foxworth v. State, 94 So.3d 1178, 1183 (¶ 13) (Miss.Ct.App.2011). Mississippi Code Annotated section 1-3-4 (Rev.2005) states that the term “capital offense” de *492 notes “criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary.” The statutory sentence for automobile burglary is imprisonment for “not more than seven (7) years.” Miss.Code Ann. § 97-17-83(1). The conviction in this case involved the noncapital offense of automobile burglary. While Bunch faced life imprisonment, he was only subject to this sentence as a consequence of his status as a habitual offender. “Case law clearly establishes that the possibility of life imprisonment as a habitual offender does not entitle one to twelve peremptory challenges under Rule 10.01.” Foxworth, 94 So.3d at 1188 (¶ 13). Therefore, Bunch was only entitled to the six peremptory challenges as provided for in the trial court.
¶ 18. We likewise find no merit to Bunch’s argument that the trial court improperly seated biased jurors on the jury. The record shows that the trial court first excused the members of the jury panel who indicated personal relationships with either Bunch or the victims. Bunch then challenged for cause two other members of the jury panel, juror number 24 and juror number 25. Bunch alleged that juror number 24 attended church and was friends with Odom, one of the victims. Bunch claimed that juror number 25 was neighbors with Odom. The trial court responded that both jurors disclosed to the court their relationships with Odom, and when asked by the trial court whether their relationships with Odom would interfere with their ability to give Bunch a fair trial, both jurors responded that the relationships would not affect their ability to be fair and impartial. The State used one of its six peremptory challenges to strike juror number 25, and Bunch exercised all six of his peremptory challenges without striking juror number 24. As such, juror number 24 sat on the jury. The supreme court has stated that a defendant must show two prerequisites before a claim concerning the denial of a challenge for cause may be made: “(1) the defendant must have exhausted all of his peremptory challenges; and (2) an incompetent juror must be forced by the trial court’s erroneous ruling to sit on the jury.” Johnson v. State, 68 So.3d 1239, 1247 (¶24) (Miss.2011). After reviewing the record, we find that even though Bunch used all of his peremptory challenges, he fails to meet the second prerequisite. Bunch fails to show that any of the jurors who actually sat on the jury were biased or incompetent. Therefore, we need not address whether the trial court erred in denying Bunch’s for-cause challenges. This issue is without merit.
II. ADMISSION OF EVIDENCE
¶ 19. This Court employs an abuse-of-discretion standard of review when considering a trial court’s admission of evidence. Moore v. State, 911 So.2d 1037, 1038 (113) (Miss.Ct.App.2005). “The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then the ruling of the lower court must be affirmed.” Id.
¶20. Bunch argues that the trial court erred in admitting the surveillance videos into evidence. Specifically, Bunch argues that the State failed to properly authenticate the surveillance videos. Bunch further alleges that the State failed to adequately provide a proper chain of custody. Rule 901(b)(1) of the Mississippi Rules of Evidence provides that authentication can be accomplished by testimony from someone familiar with and with knowledge of the contents of the document or recording. See, e.g., Moore, 911 So.2d at 1038 (¶ 4). In this case, witnesses fa *493 miliar with the businesses and the contents of the footage authenticated the videos.
¶ 21. Napp, the assistant manager at Wal-Mart, and Slay, the IT director at Wayne General Hospital, both testified as to the setup of the security systems relied upon by Wal-Mart and Wayne General Hospital, respectively, in the normal course of their businesses. Both Napp and Slay also stated that they viewed the copies of the surveillance footage prior to the trial, and that the videos accurately depicted what they saw on the original surveillance footage. Testimony showed that Napp and Slay provided the surveillance videos to law enforcement or ordered the surveillance operators to find the videotape that corresponded with the time and area where the incidents occurred to provide to law enforcement.
¶ 22. We recognize that “[t]he proper test to determine whether or not there has been a showing of the proper chain of custody of the evidence is whether there is a reasonable inference of likely tampering with the evidence.” Craig v. State, 45 So.3d 699, 709 (¶ 29) (Miss.Ct.App.2010). While the State must prove that “no reasonable inference of tampering with evidence” exists, the defendant holds “the burden of producing evidence that the chain of custody has been broken.” Id. “Proof of the chain of custody is intended to satisfy the fact-finder of the identity and validity of the evidence. Without doubts being raised, a break in the chain does not bar introduction.” Id. After reviewing the record, we find that while the State provided evidence that the copies of the surveillance footage accurately depicted the contents of the original surveillance footage, Bunch failed to produce any evidence that suggested that tampering with the surveillance videos occurred or show that a break in the chain of custody existed. Therefore, we find that this issue is without merit.
¶ 23. Bunch also argues that under Mississippi Rule of Evidence 106, the trial court erred in allowing the State to select certain portions of the surveillance videos for viewing by the jury to the exclusion of all other portions of the video footage. Rule 106 provides: “When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.” While Rule 106, as stated in its text, only refers to writings and recorded statements, the Mississippi Supreme Court applies the rule equally to video recordings, like the one at issue in this case. See Wells v. State, 604 So.2d 271, 277-78 (Miss.1992); Stribling v. State, 81 So.3d 1155, 1160 (¶ 18) (Miss.Ct.App.2011).
¶ 24. Here, the trial court allowed the State to play the portions of the surveillance videos that the State found applicable to the case at hand. Bunch failed to exercise his right, pursuant to Rule 106, to require the State to contemporaneously introduce and publish to the jury the omitted portions of the videos. We find that Bunch’s failure to object or seek contemporaneous introduction and publication before the trial court procedurally bars our review of this issue on appeal. See Ramsey v. State, 959 So.2d 15, 21 (¶ 8) (Miss.Ct.App.2006) (“[I]f no contemporaneous objection is made at trial, the error, if any, is waived.”). Procedural bar notwithstanding, the record shows that prior to playing the surveillance footage, the State informed the trial court that the omitted portions of the surveillance videos were superfluous and irrelevant footage since the videos showed hours, if not days, of footage of the parking lots at Wal-Mart and Wayne General Hospital. As acknowledged by the trial court, Bunch pos *494 sessed the ability to play any omitted portions of the surveillance footage during the defense’s case-in-chief. However, Bunch rested without presenting any evidence, as was his right since the State always bears the burden to prove guilt beyond a reasonable doubt. See, e.g., Stribling, 81 So.3d at 1163 (¶ 39). As such, this issue is without merit.
¶ 25. Bunch next argues that the trial court erred in allowing witnesses to testify as to the substance of the surveillance videos prior to the videos being entered into evidence. Bunch also argues that the trial court denied his fundamental right to a fair trial when the State “narrated” a portion of the surveillance videos while the videos were being published to the jury. Bunch fails to cite any authority in support of these alleged errors. “It is a longstanding principle of law that if an appellant fails to support her allegation of error with argument or authority, [the appellate court] need not consider the issue.” Jordan v. State, 995 So.2d 94, 103 (¶ 14) (Miss.2008). The reviewing court “presumes that the judgment of the trial court is correct and the appellant must demonstrate some reversible error....” Id. Thus, we find these issues to be without merit.
¶ 26. Lastly, Bunch argues that the trial court erred by allowing Slay, an employee of Wayne General Hospital, to operate the computer equipment that displayed the surveillance videos from Wal-Mart to the jury. The record reflects, however, that Slay simply assisted in running the electronic equipment while the Wal-Mart surveillance videos were played at trial. The trial court specifically instructed the jury that Slay worked for Wayne General Hospital and did not act as a representative of Wal-Mart. The record shows no evidence presented by the State showing that Slay held any part in the preparation of the Wal-Mart surveillance videos. The State explained to the jury that Slay only acted as a technician for the video equipment used to display to the jury the surveillance-video footage of Wal-Mart. We find that this issue is without merit.
III. RIGHT TO CONFRONTATION
¶ 27. Bunch argues that the surveillance videos constituted inadmissible hearsay evidence and violated his Sixth Amendment right to confrontation. We disagree.
¶ 28. The testimony of Napp, the assistant manager at Wal-Mart, and Slay, the IT Director at Wayne General Hospital, shows that Wayne General Hospital and Wal-Mart maintained the surveillance videos as part of their ongoing businesses. Napp and Slay testified, as the custodians of the videos, to the regular practices of Wal-Mart and Wayne General Hospital pertaining to the surveillance-video equipment. Rule 803(6) of the Mississippi Rules of Evidence provides, in part:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
The Mississippi Supreme Court has recognized that “business and public records are generally admissible absent confrontation *495 not because they qualify under an exception to the hearsay rules, but because— having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial.” Birkhead v. State, 57 So.3d 1228, 1234-35 (¶ 38) (Miss.2011). As such, we find that this issue is without merit.
IV. PERSONAL KNOWLEDGE
¶ 29. Bunch argues that the trial court allowed witnesses to testify who had no personal knowledge of the alleged automobile burglaries, in violation of Mississippi Rule of Evidence 602. We find no merit to this argument.
¶ 30. Rule 602 provides, in part:
A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.
Here, each of the five victims testified that they viewed the surveillance videos prior to trial. The five victims testified as to the items taken from their vehicles and provided descriptions as to each of their own vehicles. The victims also testified as to how the surveillance videos related to the actual damages to their vehicles. The testimony of the five victims was sufficient to support a finding that each possessed personal knowledge of the matter. Therefore, this issue is without merit.
V. SUFFICIENCY AND WEIGHT OF THE EVIDENCE
¶ 31. Bunch argues that the State failed to prove all of the elements of automobile burglary as it relates to the five-count indictment; therefore, he argues the trial court erred in denying his motion for a JNOV. Alternatively, Bunch argues that the trial court erred in denying his motion for a new trial since the verdict of guilty was against the overwhelming weight of the evidence.
¶ 32. A JNOV motion challenges the legal sufficiency of the evidence. Lewis v. State, 110 So.3d 814, 817 (¶5) (Miss.Ct.App.2013). “If the evidence ‘points in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty the proper remedy for the appellate court is to reverse and render.’ ” Id. (quoting Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). “However, if ‘reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient.’” Id. (quoting Bush, 895 So.2d at 843 (¶ 16)). We “consider the evidence in the light most consistent with the verdict and give the State the benefit of all inferences favorable to the verdict.” Id.
¶ 33. Alternatively, “[a] motion for new trial challenges the weight of the evidence.” Boyd v. State, 90 So.3d 652, 654 (¶ 7) (Miss.Ct.App.2012). “The evidence should be weighed in the light most favorable to the verdict.” Id. “Only in exceptional cases in which the evidence preponderates heavily against the verdict should the trial court invade the province of the jury and grant a new trial.” Id. “The verdict must be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
¶34. Here, the weight and the sufficiency of the evidence presented by the State support Bunch’s convictions. The jury convicted Bunch of automobile *496 burglary under section 97-17-33, which states:
Every person who shall be convicted of breaking and entering, in the day or night, any ... automobile ... in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, ... shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
¶35. In this case, the State played video-surveillance footage that showed Bunch’s maroon truck parked next to or near the victims’ vehicles, and the videos showed Bunch illegally entering those vehicles. The five victims’ testimonies describing the damage to their vehicles due to the illegal entry and the items taken from their vehicles were consistent with the damage to the burglarized vehicles. Additionally, Walley, a security officer at Wayne General Hospital, testified that in the early morning hours of November 4, 2010, he observed a vehicle pull into the parking lot, a person get out of the vehicle, and that person looking in the windows of other vehicles. Walley testified that upon noticing this odd behavior, he went to the parking lot and confronted the perpetrator, who was later identified as Bunch. Walley noted that Bunch had multiple lacerations on both of his wrists. Walley also testified that Bunch drove a maroon Ford F-150. Walley detained Bunch until Officer Daniels arrived on the premises and placed Bunch under arrest. Officer Daniels testified that shortly after he placed Bunch under arrest, Walley notified him that he had found an automobile in the parking lot with a window knocked out and the vehicle’s stereo system missing.
¶ 36. This Court must weigh the evidence in the light most favorable to the State. Thus, we are not persuaded that the jury verdict was contrary to the overwhelming weight of the evidence. The record indicates that a reasonable, fair-minded jury could find Bunch guilty beyond a reasonable doubt. We find the jury was presented with substantial evidence to support its conviction of Bunch for the five counts of automobile burglary beyond a reasonable doubt. See, e.g., Qualls v. State, 947 So.2d 365, 374 (¶ 26) (Miss.Ct.App.2007). This issue is without merit.
VI. SENTENCE
¶ 37. “Generally, a sentence will not be disturbed on appeal if it is within the limits prescribed by statute.” Whitlock v. State, 47 So.3d 668, 673 (¶ 16) (Miss.2010).
¶ 38. Bunch argues that his sentence of life imprisonment without parole as a habitual offender is disproportionate to the crimes and constitutes cruel and unusual punishment. Bunch further argues that the trial court erred in sentencing him as a habitual offender under section 99-19-83.
¶ 39. Section 99-19-83 states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
At the sentencing hearing, the State presented evidence that Bunch was previously *497 convicted (1) in May 2004 in the Circuit Court of Wayne County, Cause Number 03-213-K, for armed robbery; (2) in January 2004 in the Circuit Court of Wayne County, Cause Number 02-163-K, for uttering forgery; and (3) in May 2009 in the Circuit Court of Greene County, Cause Number 21-08-10,042(3), for possession of cash or negotiable instruments within a correctional facility.
¶40. The State presented evidence showing that Bunch was sentenced to and served terms of one year or more in a state penal institution on at least two of these three felony convictions, and at least one of these felonies was a crime of violence. Thus, it is clear that Bunch met the requirements to be sentenced as a habitual offender to life imprisonment without parole under section 99-19-83.
¶ 41. Bunch claims that under the proportionality analysis in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), his sentence is unconstitutionally disproportionate to his offense. Our supreme court has stated “that Solem is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of ‘gross disproportionality.’ ” Whitlock, 47 So.3d at 674 (¶ 19). In Hawkins v. State, 11 So.3d 123, 129 (¶ 16) (Miss.Ct.App.2008), this Court found that a Solem analysis was not required in affirming a life sentence without parole pursuant to section 99-19-83 for attempted burglary of an automobile. The Hawkins court stated:
It is clear that under the facts of this case if Hawkins were found guilty of the charge of attempted burglary of an automobile, he could be sentenced as a habitual offender under section 99-19-83, as he has one previous conviction for robbery and two for burglary. It is well established that “sentencing is within the complete discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute.” Hoops [v. State], 681 So.2d [521,] 537 [ (Miss.1996) ] (citing Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)). We find no merit to this issue, as Hawkins’s sentence was within the statutory limits. Thus, no further analysis pursuant to Solem is required.
Hawkins, 11 So.3d at 129 (¶ 16). As in Hawkins, Bunch’s sentences for automobile burglary fall within the limits prescribed by statute. Therefore, no need exists for further analysis. This issue is without merit.
VII. DELAY
¶ 42. Bunch argues that the trial court allowed an unreasonable delay between his modification of probation, arrest, and final revocation hearing. As noted by the State, Bunch’s assertion of error in delay of his revocation hearing relates to a different cause number than the one before us now on direct appeal. This argument appears to relate to Cause Number 03-213-K, which is the previous conviction to which the sentences from today’s case run consecutively. As such, this argument is not properly before this Court. Alternatively, we note that Bunch has failed to cite any authority to support his argument. As stated, “if an appellant fails to support [his] allegation of error with argument or authority, this Court need not consider the issue.” Jordan, 995 So.2d at 103 (¶ 14). “This Court presumes that the judgment of the trial court is correct and the appellant must demonstrate some reversible error to this Court.” Id. This issue is without merit.
¶ 43. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT OF CONVICTION OF FIVE COUNTS OF BURGLARY OF AN AUTOMOBILE AND SENTENCE AS A HABITUAL OFFENDER ON EACH COUNT TO *498 LIFE IMPRISONMENT, WITH THE SENTENCES TO RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO A PREVIOUS SENTENCE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Bunch was initially indicted in each of the five counts for automobile burglary under section 97-17-33 and for grand larceny under Mississippi Code Annotated section 97-17-41 (Rev.2006). The State later moved to amend the indictment to remove the charges for grand larceny, and upon granting that motion, the trial court dismissed the grand-larceny charges.