749 So.2d 1235 (1999)
Clinton McINTOSH a/k/a Clinton A. McIntosh, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00895-COA.
Court of Appeals of Mississippi.
September 21, 1999.
*1236 Richard Burdine, Columbus, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment of the Chickasaw County Circuit Court, after a jury trial, of conviction of murder and sentence of life imprisonment in the custody of the Mississippi Department of Corrections. McIntosh, aggrieved by his conviction, presents this appeal raising three issues for our review: (1) whether the trial court erred by granting both jury instructions S-1 and S-2, (2) whether the trial court erred by not granting McIntosh's requested jury instructions, and (3) whether the verdict of the jury was against the overwhelming weight of the evidence.
¶ 2. Upon review of the record, we are unmoved by McIntosh's assignments of error. Accordingly, we sustain the conviction and sentence in this case.

FACTS
¶ 3. Clinton McIntosh lived with Betty Parker in a house located next door to Betty's parents, Willie Sam Hamilton, the victim in this case, and Louise Hamilton. McIntosh also worked with Willie Sam. McIntosh had spent the afternoon of May 24, 1991, with the Hamiltons' son, James Hamilton.
¶ 4. According to the testimony of Louise Hamilton, James Hamilton drove her to the grocery store in her car. When they returned from the store, McIntosh walked from Parker's house to the Hamiltons' home. As Louise and James were unloading groceries from the car, Louise, believing that McIntosh had had drugs in her car, told him not to take drugs in her car again. She instructed McIntosh to return to Parker's premises. McIntosh became angry at this remark, and words were exchanged between Louise and McIntosh. McIntosh ran toward Parker's house and shortly thereafter returned with a butcher knife and attempted to enter the Hamilton home. Louise locked the door, *1237 and Louise, Willie Sam, and James went outside.
¶ 5. McIntosh went to back of the house, opened the back door and entered the house. He walked through the house and out the front door into the yard where the Hamiltons were located, where McIntosh stabbed Willie Sam in the side. According to Louise, Willie Sam struck McIntosh in the head with a gun he was carrying. Louise then called her sister-in-law and asked her to call the police. Then, James drove Louise to a local judge's house so that she could "take out papers" on McIntosh. The judge was not home, so they immediately returned to their home where Louise saw Willie Sam lying on the ground; he had been stabbed three more times and was almost dead.
¶ 6. Betty Parker testified that she feared McIntosh's reaction to Louise's accusations about his having had drugs in Louise's car, and she drove to her son David's place of employment to get help. David called the police, and Parker returned to the Hamiltons' residence. Willie Sam was standing on the sidewalk, and Parker first learned that McIntosh had stabbed Willie Sam. After inquiring of her father about his condition, Parker proceeded to call McIntosh's mother in an effort to get her to come and attempt to make McIntosh stop his violent behavior. Before she was able to complete the call, she heard someone yelling that McIntosh was stabbing Willie Sam. Parker ran back to the Hamiltons' residence and saw McIntosh sitting on top of Willie Sam holding a butcher knife.
¶ 7. Waverly McGregory, the grandson-in-law of the Hamiltons, lived on the other side of the Hamiltons' home opposite Parker and McIntosh. McGregory corroborated Louise's testimony, testifying that he saw McIntosh enter the Hamilton home through the back door, and he saw Louise, Willie Sam, and James exit out the front door of the home into the yard.
¶ 8. McGregory did not see the first stabbing, but he talked to McIntosh and tried to get him to calm down but to no avail. McGregory tried to take Willie Sam to his house after the first stabbing, but Willie Sam would not go. As Willie Sam stood in his yard, McIntosh walked toward Willie Sam, and McGregory stepped in front of Willie Sam. McIntosh started waving the butcher knife in McGregory's face, exclaiming that Willie Sam had hit him in the head with a gun. Willie Sam pushed McGregory out of the way and tried to hit McIntosh with the butt of the gun he was holding. Willie Sam missed, and McIntosh rushed forward and stabbed Willie Sam again. At that point, Willie Sam fell to the ground, and McIntosh sat down on top of him with the knife across Willie Sam's neck.
¶ 9. Eventually officers from the Chickasaw County Sheriffs Office arrived at the Hamiltons' home. By that time, McIntosh had left and could not be immediately located. The officers secured the area so that emergency personnel could begin to help Willie Sam. Willie Sam died as a result of his injuries. McIntosh was apprehended the next morning and taken to the sheriffs office, where he signed a waiver of rights form and gave a statement relating his version of the events that had occurred on May 24, 1991. McIntosh's statement asserted that he had stabbed Willie Sam one time with a small pocket knife in self-defense. On July 18, 1991, McIntosh was indicted for the murder of Willie Sam Hamilton. Subsequently, he was convicted of murder on March 19, 1992 and sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections.

ANALYSIS AND DISCUSSION

Preliminary Rules Issue
¶ 10. The State raises what it perceives as a problem with our rules of court that allow a defendant to file a motion for a new trial and not seek a timely ruling from the trial court. The trial court entered its final judgment in the case sub *1238 judice on March 19, 1992. McIntosh's motion for a new trial was filed on March 30, 1992. The trial court's order denying McIntosh's new trial was not filed until July 18, 1997, more than five years after the original motion was filed. In the interim, in 1994, McIntosh filed a pro se motion seeking some relief from his conviction; however, there is no disposition of this motion in the record. McIntosh's notice of appeal was filed the same day as the trial court's order denying the motion for a new trial was filed.
¶ 11. While it is mildly disturbing that such a lengthy period passed between the filing of the motion for a new trial and the trial court's ultimate denial of that motion, McIntosh was, presumably, incarcerated during this period of time. Thus, the only harm, it seems, came to McIntosh. If he chose not to pursue a disposition of his motion, then that is his choice. However, we would encourage our trial judges, as much as possible, to avoid such long delays in disposing of routine motions such as the one at issue here so as to allow for the timely dispensation of justice. While an amendment to the Uniform Rules of Circuit and County Court Practice to address this issue may be advisable, we leave this question to the collective wisdom of our supreme court for their consideration.
¶ 12. We now move to the merits of McIntosh's appeal.
I. WHETHER INSTRUCTIONS S-1 AND S-2 ARE CONTRADICTORY AND IMPERMISSIBLY REQUIRE THE JURY TO DECIDE WHICH INSTRUCTION CORRECTLY PORTRAYS THE LAW?
II. WHETHER THE TRIAL COURT COMMITTED ERROR IN NOT GRANTING THE INSTRUCTIONS REQUESTED BY THE DEFENDANT?
¶ 13. In his first issue, McIntosh argues that the trial court erred by giving jury instructions S-1 and S-2, arguing that the instructions were contradictory and left the jury to perform a role left to the trial judge: to determine which law was applicable in McIntosh's case. However, the record reflects that McIntosh did not object to the trial court's decision to give either jury instruction S-1 or S-2. Accordingly, this issue was waived by McIntosh's failure to contemporaneously object. Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994). Accordingly, this issue was not properly preserved for our review, and we decline to consider it now. Id.
¶ 14. In his second issue, McIntosh asserts that the trial court erred by refusing to grant the instructions which he requested. Each of the three instructions tendered by McIntosh surrounded McIntosh's claim that he acted in self-defense in stabbing the victim. However, the trial court granted Instruction S-3 which provided:
The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either: actual, present and urgent; or, the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm; and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
This instruction is referred to as the Robinson instruction, flowing from a 1983 decision of the Mississippi Supreme Court which provided that the exact instruction given in McIntosh's trial was recommended by the supreme court for future use. Robinson v. State, 434 So.2d 206, 207 (Miss.1983). In Robinson, Justice Walker criticized, but sustained, the State's offered self-defense instruction, which read as follows:
The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and *1239 urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to do him some great bodily harm, and in addition to this, that there must be imminent danger of such design being accomplished; and hence, mere fear, apprehension or belief, however sincerely entertained by one person, that another designs to take his life or to do him some bodily harm, will not justify the former in killing the latter. A party may have apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the Jury may determine the reasonableness of the ground upon which he acted.
Id. While finding this instruction acceptable as a correct statement of Mississippi law regarding self-defense, the court's majority recommended the language utilized by Judge Coleman in McIntosh's trial as a substitute for the above language in an effort to avoid a perceived confusion and redundancy in the self-defense instruction. Id. Thus, from Robinson, we are left with two instructions, both of which the supreme court at that time approved and which, to avoid confusion, we will call Robinson-old and Robinson-new.
¶ 15. Approximately two years later, the supreme court reevaluated the Robinson case in Flowers v. State, 473 So.2d 164 (Miss.1985). In Flowers, Chief Justice Patterson seized upon a problematic portion of the Robinson-old language which read: "A party may have apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril." Id. at 165. Once and for all, post-Flowers, the Robinson-old instruction, while only criticized in Robinson, was declared inappropriate for perpetuity. However, the Flowers court did not address the Robinson-new instruction and it remained in full force and effect as announced in Robinson until approximately eight months ago.
¶ 16. In Reddix v. State, 731 So.2d 591 (¶¶ 17 & 20-21) (Miss.1999), the supreme court addressed the Robinson-new instruction. We quote extensively from Presiding Justice Sullivan's unanimous Reddix opinion:
Reddix complains the State's self defense instruction, albeit a correct statement of the law, is incomplete in that it failed to instruct the jury that it was bound to acquit Reddix of aggravated assault if it believed Reddix acted in self defense. The self defense instruction offered by the State explained to the jury that it was bound to find the defendant not guilty if it believed he acted in self defense. There was no instruction given that notified the jury of its duty to acquit the defendant if it believed he acted in self defense. Reddix concludes that since the State's self defense instruction did not notify the jury they were bound to acquit Reddix if they found that he acted in self defense, then the State's instruction did not sufficiently treat the subject of self defense....
We agree. The instruction submitted by the State and given by the lower court in this case is the verbatim self defense instruction recommended to prosecutors by this Court in Robinson v. State, 434 So.2d 206, 207 (Miss.1983) (criticizing a state instruction and suggesting alternate language for the state), overruled by Flowers v. State, 473 So.2d 164 (Miss.1985) (condemning the instruction previously criticized in Robinson and overruling all cases that approved it). This instruction, while fine for the State, is not sufficient as a neutral self defense instruction. It is couched in prosecutorial terms and fails to state that self defense is, in fact, a defense. In other words, the instruction failed to notify the jury it was bound to acquit Reddix if it found that he acted in self defense. Assuming, as we do that juries follow the instructions given to them by the trial court, Collins v. State, 594 So.2d 29, 35 (Miss.1992), this means the jury could not have acquitted Reddix *1240 based upon self defense because it was not informed of any law permitting them to do so.
Because the tendered instruction did not sufficiently treat the subject of self defense, the lower court should have either reformed the instruction so as to form a complete statement of the law or advised defense counsel of the deficiency and allowed counsel a reasonable amount of time to prepare a correct instruction. Because neither of these actions were taken, the failure constitutes error and warrants reversal.
Id.
¶ 17. Of course, Reddix does not alter the burden of proof in cases where self-defense is raised. Once a defendant properly raises self-defense, the burden of proof rests with the prosecution to disprove that a defendant acted in necessary self-defense. Heidel v. State, 587 So.2d 835, 843 (Miss.1991). Further, Reddix stopped short of overruling the Robinson-new instruction, but merely added an additional requirement: in addition to the Robinson-new instruction, Reddix requires that the trial court explicitly instruct the jury that the panel is duty bound to acquit a defendant if the members of the panel find that the defendant acted in self-defense. Thus, we look to the remaining instructions given by the trial court to ascertain if such an instruction was given.
¶ 18. Our review of the record finds that such an explicit instruction required by the Reddix court was given in the case sub judice in Instruction S-2 which provided in pertinent part:
If you find from the evidence in this case beyond a reasonable doubt that the deceased, Willie Sam Hamilton, was a living person, and he died as a result of the defendant stabbing him with a butcher knife in the heat of passion, without any premeditated design to effect the death of the said Willie Sam Hamilton, and not in necessary self-defense, then you shall find the defendant guilty of manslaughter.... [i]f the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.

(emphasis added).
In Instruction S-2, the burden was placed squarely upon the prosecution to prove beyond a reasonable doubt that the McIntosh's killing of Hamilton was not in lawful self-defense, and that if this was not proven as such, the jury was bound to acquit McIntosh.
¶ 19. Accordingly, as the trial court granted a self-defense instruction and adequately informed the jury members of their collective duty to acquit McIntosh if the panel found that the prosecution failed to disprove that McIntosh acted in self-defense as required by Reddix, the trial judge appropriately denied the granting of McIntosh's proposed instructions. This assignment of error is overruled.

III. WHETHER THE VERDICT OF THE JURY IS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 20. In his third issue, McIntosh asserts that the verdict of the jury was against the overwhelming weight of the evidence. Specifically, McIntosh asserts that the jury did not properly weigh the evidence as there was sufficient evidence presented for the jury to find that he stabbed Willie Sam Hamilton in self-defense.
¶ 21. It is within the trial court's discretion whether to grant a motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss.1994). The motion is not considered de novo on review. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The appellate court will only reverse where it finds that there has been an abuse of discretion. Wetz v. State, 503 So.2d 803, 812 (Miss. 1987); Catchings v. State, 684 So.2d 591, 600 (Miss.1996). This Court will reverse the trial court's denial of a motion for a new trial only where it is "convinced that the verdict is so contrary to the over-whelming *1241 weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983); May v. State, 460 So.2d 778, 781-82 (Miss.1984). See, e.g., Wetz, 503 So.2d at 812; Taylor v. State, 672 So.2d 1246, 1256 (Miss.1996).
¶ 22. The evidence brought forth in this case clearly presents an issue for the jury to decide. First, Louise Hamilton testified that she saw McIntosh stab Willie Sam without provocation. Waverly McGregory also stated under oath that he witnessed McIntosh stab Willie Sam with a butcher knife without provocation from Willie Sam. Betty Parker testified that while she did not see McIntosh injure Willie Sam, she did see McIntosh sitting on top of Willie Sam while holding the butcher knife that was later identified as the murder weapon. She also stated that the butcher knife belonged to her and that she had last seen it in her dish drainer in her home where she lived with McIntosh. The only evidence McIntosh offers in support of his version of the incident is his own testimony.
¶ 23. In cases such as this where the testimony of witnesses conflict, the jury is ultimately responsible for making findings of fact and weighing witness credibility. Wetz, 503 So.2d at 812; Dixon v. State, 519 So.2d 1226, 1228 (Miss.1988). The jury's discretion in choosing whether to accept all or part of a witness's testimony is unfettered. Meshell v. State, 506 So.2d 989, 992 (Miss.1987). On appeal, this Court does not reevaluate the jury's verdict or findings of fact. Veal, 585 So.2d at 695. All that is necessary for the appellate court to uphold the verdict of the jury is for there to have been a factual dispute presented to the jury for determination. Groseclose, 440 So.2d at 300.
¶ 24. In this case, there were several facts in dispute and all were properly presented to the jury. In addition, the jury's verdict of guilty of murder is supported by the evidence and inferences which could have reasonably been drawn from it. Thus, we cannot say that an unconscionable injustice would result by sustaining this verdict. Therefore, we find no merit in McIntosh's third issue.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO CHICKASAW COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, AND THOMAS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.