LEE, C.J.,
for the Court:
■ ¶ 1. Joseph Moss was convicted in the Wayne County Circuit Court of two counts-of manslaughter. He was sentenced to twenty years on each count, with the sentences to be served consecutively, for a total of forty years in the custody of the Mississippi -Department' of Corrections. In his appeal, Moss argues the trial court erred by: (1) denying his motion for a directed verdict and motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial; (2) overruling *12 his ■ objection pursuant to'Mississippi Rule of Evidence. 404(b); (3) overruling his objection pursuant to Mississippi Rules of Evidence 106 and 1002; and (4) admitting evidence of his involuntary confession. Finding no error, we affiftn.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 18, 2013, Moss awakened to his .sister requesting that Moss and her boyfriend, named True, leave her residence at the Highrise Apartments in Waynesboro, Mississippi. With no transportation,' Moss contacted his mother to pick him up. True contacted Tyrone Clemons and Fredrick Hammock to pick him up.
¶3. While waiting'for Moss’s mother, Moss, True, Clemons, and Hammock went to the store in Hammock’s car for alcohol and cigarettes. During the trip, Moss 'noticed a gun in the armrest of the car. When Moss, True, Clemons, and Hammock returned from the store, they remained in the parking lot at the Highrise Apartments. Throughout.the day, Clemons and Hammock were verbally aggressive towards Moss. In a few separate‘instances, Clemons and Hammock uttered profanities; engaged in name-calling; and made verbal threats towards Moss, his sister, and his brother.[1]
¶ 4. That evening, Moss returned to the car. and obtained the gun he noticed earlier. While in the car, Moss kicked what he thought was another gun but was actually a knife. After concealing the gun under his jacket and in his waistband, Moss walked toward the back of. the car. At this point, either Clemons or Hammock moved towards Moss and-, with his hands in his pockets, yelled: “Man, f* * * this s* * *. Man, come here!” At that point, Moss shot the man while the other man ran and jumped in the car,[2] From a distance of greater than three feet, Moss shot Clemons six times (five of which were in Clemons’s back) and shot Hammock seven times (four of which were in Hammock’s back) before he fled from the Highrise Apartments.- At approximately 7:30- p.m., the Waynesboro police arrived at the scene. No weapons weré found on either Clemons or Hammock. The only weapon found at the scene was the knife, which was found in the car’s console.
¶ 5. Around 10:30 p.m., Moss called his ex-girlfriend’s mother, Dawn Young, and stated that he had “nothing to lose” and was coming to “teach her [daughter] a lesson” for breaking up with him. According to Young, Moss indicated he had nothing to live for.
¶ 6. Moss later called his ex-girlfriend, Kaylee Burden, and told her “he had shot two people and ... was coming for [her].” At this, point, Moss, became a person of interest in the shooting of Clemons and Hammock. However, an attempt by the police to locate Moss was unsuccessful.
¶ 7: Two days later, on January 20, 2013, Moss turned himself in to the Waynesboro Police Department. Sergeant Brian Everett and Officer Chris Harris conducted a video-recorded' interview of Moss.[3] Before the interview, Moss was advised of his Miranda rights, signed a waiver of those rights, and agreed to talk to the officers. Initially, Moss repeatedly denied any involvement in the shooting of Clemons and Hammock. Because Officer Harris did not *13 think- Moss was being - truthful, Officer Harris lied to Moss by stating that there were three witnesses who identified Moss as the shooter: Sergeant Everett also told Moss that there were three witnesses and further stated: “We want to help you out.” Moss continued to deny involvement but eventually claimed he felt threatened by Clemons and Hammock and shot them in self-defense.
¶ 8. At trial, Moss objected under Mississippi Rules of Evidence 106 and 1002 to Officer Harris’s testimony of the interview. Moss later renewed the objection, which was overruled again. The video of the interview was then admitted into evidence without objection. The State noted that the video was not watched in open court due to the jurors’ ability to hear. However, the trial court, the State, and Moss encouraged the jurors to watch the video during jury deliberations.
¶ 9. At the conclusion of the State’s case, Moss moved for a directed verdict, which was denied. Without producing any evidence, the defense rested. After deliberations, the jury convicted Moss of two counts of manslaughter. Moss filed his motion for a JNOV or, in the alternative, a new trial, which was denied.
DISCUSSION
I. Weight and Sufficiency of the Evidence
¶ 10. In his first issue, Moss claims the trial court erred in denying his motion for a directed verdict and motion for a JNOV or, in the alternative, a new trial.[4] Specifically, in his brief, Moss' argues the evidence shows that he killed Clemons and Hammock in. self-defense, and therefore, the evidence is not sufficient to support his manslaughter convictions. Moss also argues- that the verdict is against the overwhelming weight of the evidence.
¶ 11. -As a preliminary-matter,, we -note that Moss did not state the specific grounds for his motion for a directed verdict. See Jordan v. State, 936 So.2d 368, 372 (¶ 20) (Miss.Ct.App.2005). Furthermore, • aside from the issues later addressed in this opinion, Moss’s motion for a JNOV or, in,the alternative, a,new trial is vague and general, at best. See id, at (¶ 22). Therefore, this issue is procedurally barred. See id. at 372-73 (¶ 22). Procedural bar notwithstanding, we find this issue is without merit.
A. Directed Verdict'or JNOV
 ¶12. “Motions for a directed verdict and a [JNOV] challenge the legal sufficiency of the evidence,- and the standard[s] of review ... are identical.” Tucker v. State, 62 So.3d 397, 407 (¶ 37) (Miss.Ct.App.2010) (quoting Nelson v. State, 10 So.3d 898, 905 (¶ 29). (Miss.2009)). “Because each challenge requires consideration of the evidence before the trial court when, made, an appellate cburt reviews the ruling on. the .last occasion, the challenge was made in the trial court.” Id. (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). Here, this occurred when the trial court denied Moss’s motion for a JNOV. “Reversal of the trial court’s ruling can occur only when, ..‘after viewing all the evidence in the light most favorable to the verdict, one or more of the .elements of the charged offense is such. that reasonable and fair-minded jurors could only find the *14 accused not guilty.’ ” Id. (quoting Croft v. State, 992 So.2d 1151, 1157 (¶ 24) (Miss.2008)).
¶ 13. “Once a defendant claims self-defense, the State bears the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense.” Franklin v. State, 72 So.3d 1129, 1136 (¶ 29) (Miss.Ct.App.2011) (citing McIntosh v. State, 749 So.2d 1235, 1240 (¶ 17) (Miss.Ct.App.1999)). “A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe he was in danger of imminent death or serious bodily harm.” Id. (quoting Livingston v. State, 943 So.2d 66, 71 (¶ 13) (Miss.Ct.App.2006)). “Thus, the question of whether a defendant acted in self-defense or in defense of others is a question for the jury to resolve.” Id. (citing White v. State, 976 So.2d 415, 420 (¶ 23) (Miss.Ct.App.2008)).
¶ 14. Although Moss claims that he acted in self-defense, the State presented contradictory evidence to show: Moss shot Clemons six times (five of which were in the back) and shot Hammock seven times (four of which were in the back) at a distance of greater than three feet; Moss fled the scene after the shooting; no weapons were found on either Clemons or Hammock; Moss said to Young that he had “nothing to lose” and was going to “teach her [daughter] a lesson”; and Moss stated to his ex-girlfriend “he had shot two people, and ... was coming for [her].”
¶ 15. As the fact-finder, it was within the jury’s province to consider this evidence and determine whether or not Moss acted in self-defense. See id. at 1137 (¶ 31). Viewing the evidence in the light most favorable to the State, and giving the State the benefit of all favorable inferences that may be reasonably drawn from the evidence, we find that the record reflects that sufficient evidence was presented for a competent jury to find beyond a reasonable doubt that Moss was guilty of manslaughter and was not acting in reasonable self-defense. See Howell v. State, 144 So.3d 211, 218 (¶23) (Miss.Ct.App.2014). Therefore, we find no error in the trial court’s denial of Moss’s motion for a JNOV. See id.
B. New Trial
¶ 16. “Unlike a motion for a directed verdict or JNOV, a motion for a new trial challenges the weight of the evidence.” Jones v. State, 991 So.2d 629, 634 (¶ 12) (Miss.Ct.App.2008) (citing Sheffield v. State, 749 So.2d 123, 127 (¶ 16) (Miss.1999)). “A new trial will not be awarded unless ‘the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.’ ” Id. (quoting Esparaza v. State, 595 So.2d 418, 426 (Miss.1992)).
¶ 17. Moss contends that the evidence shows that he acted in self-defense. As previously mentioned, whether Moss acted in reasonable self-defense was a question for the jury to decide. See Franklin, 72 So.3d at 1137 (¶ 33). The jury resolved this issue in favor of Moss’s conviction. See id. We find that the verdict is not against the overwhelming weight of the evidence. See id. Therefore, we find no error in the trial court’s denial of Moss’s motion for a new trial. See id.
II. Mississippi Rule of Evidence 404(b)
¶ 18. In his second issue, Moss claims Young’s testimony was inadmissible under Rule 404(b).[5] Moss further *15 claims Young’s testimony was irrelevant and prejudicial.
¶ 19. “We review evidentiary rulings for abuse of discretion, acknowledging that the trial judge ‘enjoys a great deal of discretion’ regarding the admissibility of evidence.” Grindle v. State, 134 So.3d 330, 338 (¶ 25) (Miss.Ct.App.2013) (quoting Gore v. State, 37 So.3d 1178, 1183 (¶ 13) (Miss.2010)).
¶ 20. “Rule 404(b) ... • precludes evidence of other crimes, wrongs, or acts to show that the defendant acted in conformity therewith.” Townsend v. State, 681 So.2d 497, 507 (Miss.1996). “This.rule exists to prevent the State-from suggesting that, since a defendant has committed other crimes previously, the probability is greater that he.is also guilty of the offense for which he is presently charged.” Robinson v. State, 35 So.3d 501, 506 (¶ 15) (Miss.2010) (quoting Jasper v. State, 759 So.2d 1136, 1141 (¶ 23) (Miss.1999)).
¶21. In the instant' case, it was not a past crime that was being introduced. Rather it was essentially different parts of the same crime or transaction. “We allow proof of another crime or act when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences.” Brown v. State, 890 So.2d 901, 912 (¶ 32). (Miss.2004) (citing Duplantis v. State, 644 So.2d 1235, 1246 (Miss.1994)). “Proof of another crime or act is also admissible where necessary to identify the defendant ... or to prove state, of mind.” Id. Because Young’s testimony was so interrelated to the charged crime and because it was necessary to prove state of mind, it was both relevant and admissible.
¶ 22. “[E]vidence admissible under Rule 404(b) is also subject to the prejudice test of [Mississippi] Rule [of Evidence] 403; that is, even though the [trial court] considered the evidence at issue admissible under Rule 404(b), it was still required- by Rule 403 to consider whether its probative value .... was substantially outweighed by the danger of unfair prejudice.” Jones v. State, 920 So.2d 465, 475 (¶ 32) (Miss.2006). “We do not interpret this requirement to be a regimented procedure that must be explicitly performed[.]” Id. at 476 (¶ 34). “Though this court certainly expects trial judges to have considered Rule. 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words.” Id. “[0]ur review depends on .the evidence and not the judge, and while a judge’s on-the-record analysis is recommended as it serves to fortify the judge’s position for purposes of review, the' lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.” Id. The judge’s failure to perform an on-the-record Rule 403 analysis in no way affected Moss’s rights. See id. Moreover, Young’s testimony was properly admitted, as its probative value in establishing the crime was not substantially outweighed by the danger of unfair prejudice. See id. This issue is without merit.
III. Mississippi Rules of Evidence 106 and 1002
" ¶ 23. In his third issue, Moss claims the trial court erred in overruling his objections pursuant to Rules 106 and 1002.
A. Rule 106
- ¶ 24. Moss claims the State should have been required to play the *16 video of his interview in its entirety pursuant to Rule 106, which provides: “When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.” “[T]he Mississippi Supreme Court applies the rule equally to video recordings, like the one at issue in this case.” Bunch v. State, 123 So.3d 484, 493 (¶ 23) (Miss.Ct.App.2013).
¶ 25. Moss possessed the ability to play any portion of the video during the defense’s case-in-chief; however, Moss rested’without presenting any evidence. Id. at 493-94 (¶ 24). Additionally, the jury had access to and was encouraged to watch the video during its deliberations. Wells v. State, 604 So.2d 271, 277 (Miss.1992). This issue is without merit.
B. Rule 1002
¶26. - Moss also claims Officer Harris should not have been able to testify as to the substance of the video pursuañt to Rule 1002, the best-evidence rule.[6]
¶27. Rule 1002 provides: “To prove the content of a ... recording ... the [original recording] ... is required except as otherwise provided by law.” However,
[w]here proof of a conversation has been of two different kinds, namely a recording thereof and testimony by witnesses who overheard it, it has been argued that both the recording and the testimony were the best evidence; however, the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other.
Winters v. State, 473 So.2d 452, 458 (Miss.1985).
' ¶ 28. The best-evidence rule does not exclude Officer Harris’s testimony relating to the interview because he participated in the interview and had firsthand knowledge of-the facts. Quinn v. State, 479 So.2d 706, 709 (Miss.1985). If Moss had wished to use the video as substantive evidence of his,- own or for impeachment, he was free to do so. Id. The existence of a video, however, in no way operates to exclude -the direct testimony of,,, Officer Harris. Id. This issue is without merit.
IV. Involuntary Confession
¶ 29. In his- final issue, Moss claims the interview by the police was coercive and inducive, which resulted in an involuntary confession in violation of his constitutional rights. ' Because of this, Moss claims the trial court erred when it admitted evidence of his involuntary, confession.
¶30. “In order for a confession to be admissible at trial[,] it must have been intelligently, knowingly[,] and voluntarily given, and not a product of police threats, promises[,] or inducements.” Wilson v. State, 936 So.2d 357, 361 (¶ 8) (Miss.2006) (citing Manix v. State, 895 So.2d 167, 180 (¶ 39) (Miss.2005)). “In determining whether a defendant’s confession was intelligently, knowingly[,] and voluntarily given[,] the trial court sits as a finder of fact.” Id. (citing Glasper v. State, 914 So.2d 708, 716 (¶ 21) (Miss.2005)). ’ “Therefore; this Court will reverse the trial court’s determination only when it was manifestly incorrect.” Id. “A *17 confession is voluntary when, taking into consideration the totality of the circumstances, the statement,is- the product of the accused’s free and rational choice.” Id. at 361-62 (¶ 8) (citing Jacobs v. State, 870 So.2d 1202, 1207 (¶ 10) (Miss.2004)). “The prosecution bears the burden of showing beyond a reasonable doubt that the confession was voluntary.” Id. at 362 (¶ 8) (citing Glasper, 914 So.2d at 717).
¶31. “The Mississippi Supreme Court has held that ‘a trial judge will riot be found in error on a matter not presented to him for decision.’ ” Carlisle v. State, 936 So.2d 415, 421 (¶ 19) (Miss.Ct.App.2006) (quoting Smith v. State, 729 So.2d 1191, 1205-06 (¶ 63) (Miss.1998)). Moss did not move to suppress his confession- or challenge its admissibility at trial based on its involuntary nature. Therefore, Moss is procedurally barred from raising this issue on appeal.
¶ 32, THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS ÓN EACH COUNT, WITH THE SENTENCES TO BE SERVED CONSECUTIVELY, FOR A TOTAL OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY $1,000 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.

. For example, Clemons and Hammock threatened to knock Moss’s teeth out.

. Until this point, all facts have been taken from the Appellant’s brief.

.The interview took place at the Wayne County Sheriff's Office.

. Moss claims the trial court had enough evidence to acquit him pursuant to the Weathers-by rule. However, "application of the Weath-ersby rule is precluded 'where the accused, following the slaying, gives conflicting versions of how the killing took place, or initially denies the act.’ ” McQuarters v. State, 45 So.3d 643, 650 (¶ 21) (Miss.2010) (quoting Blanks v. State, 547 So.2d 29, 33 (Miss.1989)).

. Moss also claims Young's testimony was inadmissible under Mississippi Rule of Evi *15 dence 404(a) but failed to make a contemporaneous objection.-' ”[I]f no contemporaneous objection is made at trial, the error, if any, is waived.” Ramsey v. State, 959 So.2d 15, 21 (¶ 8) (Miss.Ct.App.2006).

. Moss also claims Officer Harris should not have been able to testify as to the substance of the video pursuant to Mississippi Rules of Evidence 1001, 1004, and 1006 but failed to make a contemporaneous objection. ‘‘[I]f no contemporaneous objection is made at trial, the error, if any, is waived.” Ramsey, 959 So.2d at 21 (¶ 8).