# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01216-COA

**KAREN LYNN WOODS A/K/A KAREN WOODS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/10/2015 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A DWELLING AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINED $2,000 |
| DISPOSITION: | AFFIRMED - 01/24/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1.     A Neshoba County jury convicted Karen Woods of burglary of a dwelling. *See* Miss. Code Ann. § 97-17-23 (Rev. 2014). On appeal, Woods raises the following issues: (1) whether the circuit court erred by admitting into evidence her pretrial confession; and (2) whether the circuit court erred by overruling the defense's objection to part of Investigator Ralph Sciple's testimony. Finding no error, we affirm Woods's conviction and sentence.

# FACTS

¶2. A grand jury indicted Woods and Randy Goodin for the April 28, 2014 burglary of Betty Triplett's home. At Woods's trial, Triplett testified that she left her home on the day of the burglary to seek shelter from a tornado. Triplett stated that she and her son, Steve, returned home later that same day to find that a back bedroom window had been broken. Triplett said that she observed glass both inside and outside the house where the window had been broken. In addition, Triplett stated that there was blood throughout the house and on a decorative vase she owned. Triplett also testified that several items, including some jewelry, clothing, and guns, were stolen.

¶3. Triplett testified that she had met Woods prior to the burglary. According to Triplett, Woods worked at a restaurant where Triplett sometimes ate. Triplett stated that, following the burglary, Woods contacted her to apologize for the break-in. Triplett further testified that Woods offered to replace Triplett's broken window and to return Triplett's stolen property.

¶4. On cross-examination, Triplett denied the defense's accusation that Woods came to her house on the day of the burglary to buy pills. Triplett testified that she had never sold Woods any pills although Woods had previously asked her for pills. Triplett stated that, after the burglary, she encountered Woods in front of a store. According to Triplett, Woods attempted to sell Triplett her own stolen property. Triplett stated that Woods also asked for some pills during the encounter. However, Triplett testified that she told Woods she did not have any pills, and she again testified that she never sold pills to Woods at any time.

¶5. Investigator Sciple with the Neshoba County Sheriff's Department next testified that

he investigated the reported burglary at Triplett's home. Investigator Sciple stated that he received a phone call about the burglary on April 28, 2014, which was the same day that a tornado went through Louisville, Mississippi. In response to the reported burglary, a deputy was immediately dispatched to Triplett's home. Investigator Sciple testified that the deputy observed blood in Triplett's home, and the deputy collected a piece of cardboard from the home that had blood on it. Investigator Sciple further stated that, instead of personally going to Triplett's home, he stayed in Louisville to help with the tornado damage because Triplett initially reported that nothing had been stolen.

¶6.     Investigator Sciple testified that Triplett again contacted law enforcement on May 3, 2014, to report that several items had in fact been stolen. A deputy returned to Triplett's home, and during the visit, the deputy observed blood on a vase Triplett owned. Based on Triplett's statement to law enforcement, Investigator Sciple believed that the blood on the vase must have come from the person who burglarized the home. As a result, Investigator Sciple instructed the deputy to collect the vase from Triplett's home. Once he had the vase at his office, Investigator Sciple photographed the vase and collected samples of the blood on the vase. After later learning that Woods and her boyfriend, Goodin, were suspects in the burglary, Investigator Sciple testified that he obtained permission to collect DNA swabs from both Woods and Goodin. Investigator Sciple testified that he sent both the DNA samples and the blood swabs to the Mississippi Crime Laboratory for analysis. Although he did not reveal the results, Investigator Sciple confirmed that he received a report back from the Mississippi Crime Laboratory with the requested analysis.

3

¶7. On May 20, 2014, Investigator Sciple questioned Woods about the burglary of Triplett's home. Investigator Sciple stated that the questioning took place in his office at the sheriff's department and that he and Woods were the only two present during the interview. During a suppression hearing conducted outside the jury's presence, the State proffered Investigator Sciple's testimony to show that Woods's statement to Investigator Sciple was made voluntarily, knowingly, and intelligently. After hearing the proffered testimony, the circuit court determined that Investigator Sciple properly informed Woods of her rights and that Woods voluntarily waived them and made a statement to Investigator Sciple that was free from intimidation or coercion. Based on its findings, the circuit court overruled the defense's motion to suppress Woods's pretrial statement and the waiver of her rights.

¶8. Back in the jury's presence, Investigator Sciple testified that he advised Woods of her constitutional rights and that she voluntarily chose to sign a form to waive her rights. Investigator Sciple further testified that Woods did not appear to be under the influence of drugs or alcohol at the time of the interview. Instead, Investigator Sciple stated that Woods was responsive and provided coherent answers to his questions. Investigator Sciple also testified that he used no threats, coercion, or promises to induce Woods to sign the waiver or to speak with him. Over the defense's objection, the circuit court admitted into evidence Woods's signed waiver of her rights.

¶9. Investigator Sciple further testified that, during their interview, Woods never asked for an attorney to be present, and she never asked to stop the interview. Investigator Sciple stated that Woods declined to write down her statement about the burglary and instead asked

4

that Investigator Sciple write out the statement. According to Investigator Sciple, he did so, and then he read the statement aloud to Woods. In addition, Investigator Sciple testified that he allowed Woods to read the statement for herself and to make any corrections before he and Woods both signed the statement.

¶10. Over the defense's objection, the circuit court admitted into evidence Woods's signed pretrial statement, which said:

> I am not sure of the date, but it was about a month ago in the afternoon. It was bad weather. I was mad at [Triplett] because she was going to trade me some pills for a table, and she did not do what she said she was going to do. [Goodin and I] went to the house. I can't remember a lot of stuff, but I went in the side door, and I took a Mason jar and a bag with medication in it. I don't know if [Goodin] took anything or not. I threw the bag out going down the road. I called [Triplett] several days later and told her I broke into her house and was sorry.

¶11. Investigator Sciple testified that, at the time he interviewed Woods, he fully believed her statement that she had entered Triplett's home through the side door and had not bled inside the home. However, Investigator Sciple further stated that he had since changed his mind because he now had "evidence that she did bleed in the house . . . ." The defense objected to that portion of Investigator Sciple's trial testimony and asked that the circuit court strike the statement from the record. The circuit court, however, overruled the defense's objection.

¶12. The jury next heard testimony from Joesph Heflin, a forensic biologist from the Mississippi Crime Laboratory who specialized in serology and DNA analysis. The circuit court accepted Heflin as an expert in forensic science. Heflin testified that he analyzed the unknown blood samples from the vase and the piece of cardboard collected from Triplett's

home and compared the samples to the known DNA samples Investigator Sciple collected from Woods and Goodin. Heflin stated that the blood swabbed from the piece of cardboard and the vase matched Woods's DNA.

¶13. Based on the evidence and testimony presented at trial, the jury found Woods guilty of the burglary of Triplett's home. The circuit court sentenced Woods to fifteen years in the custody of the Mississippi Department of Corrections and ordered her to pay a $2,000 fine. Woods then filed an unsuccessful motion for a new trial. Aggrieved by her conviction and sentence, Woods appeals.

## DISCUSSION

### I. Whether the circuit court erred by admitting into evidence Woods's pretrial confession.

¶14. On appeal, Woods argues she was in a state of confusion at the time Investigator Sciple interviewed her about the burglary of Triplett's home. Woods further alleges that Investigator Sciple knew of her confusion and "likely believed that the confusion was pill or drug induced." Based on these assertions, Woods contends that she did not voluntarily, knowingly, and intelligently sign the waiver of her rights or give her statement to Investigator Sciple. As a result, Woods claims that the circuit court erred by admitting into evidence her signed pretrial confession.

¶15. This Court reviews the admission or exclusion of evidence for abuse of discretion. *Fortenberry v. State*, 195 So. 3d 890, 893 (¶11) (Miss. Ct. App. 2016). In previously discussing the admissibility of a defendant's confession, this Court stated:

> [F]or a confession to be admissible at trial, it must have been intelligently,

6

knowingly, and voluntarily given, and not a product of police threats, promises, or inducements. In determining whether a defendant's confession was intelligently, knowingly, and voluntarily given, the trial court sits as a finder of fact. Therefore, this Court will reverse the trial court's determination only when it was manifestly incorrect. A confession is voluntary when, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice. The prosecution bears the burden of showing beyond a reasonable doubt that the confession was voluntary.

*Moss v. State*, 190 So. 3d 9, 16-17 (¶30) (Miss. Ct. App. 2015) (internal citations and quotation marks omitted).

¶16. In *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966), the Mississippi Supreme Court established the following procedure for a trial court to use to determine whether a confession was voluntarily made:

> The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury.

(Internal citation omitted).

¶17. In the present case, the circuit court conducted a suppression hearing outside the jury's presence. During the hearing, the State offered Investigator Sciple's testimony to establish a prima facie case that Woods voluntarily, knowingly, and intelligently signed the waiver of her rights and the confession. Investigator Sciple testified that he and Woods were the only individuals present during the interview in his office. Although Woods did not remember every detail about the actual burglary, Investigator Sciple testified that she appeared to fully

7

understand what was going on during their interview and that she was both coherent and responsive at the time of the interview. In addition, Investigator Sciple stated that he had spoken to Woods on several different occasions and knew she had a problem with pills. However, Investigator Sciple testified that Woods was not under the influence of any drugs when he interviewed her about the burglary.

¶18. Investigator Sciple further testified that, after fully advising Woods of her constitutional rights, he read the waiver form to Woods and allowed her to read the form for herself. Investigator Sciple stated that he used no threats, coercion, or offers of reward to induce Woods to sign the waiver and that she voluntarily signed the form. In addition, Investigator Sciple testified that Woods voluntarily signed her statement about the burglary. He again stated that he used no threats, coercion, or offers of reward to induce Woods to sign the statement. After writing down Woods's statement as she requested, Investigator Sciple read the statement aloud to Woods and gave her the opportunity to read the statement for herself. Investigator Sciple stated that Woods made no changes or corrections to the statement before signing it. In addition to the State's direct examination of Investigator Sciple, the circuit court questioned Investigator Sciple, and the defense cross-examined him.

¶19. Upon review, we find the State met its burden of proving that Woods voluntarily gave her confession. Although Woods argues on appeal that she was confused at the time she gave her statement and that Investigator Sciple clearly knew of her confusion, the record fails to reflect any evidence or testimony to support her assertions. The record instead reflects Investigator Sciple's unrefuted testimony that (1) he and Woods were the only individuals

present when Woods gave her statement; (2) Woods was coherent, responsive, and not under the influence of any drugs at the time she gave her statement; and (3) no threats, coercion, or promises were used to induce Woods's statement. Under the totality of the circumstances, we find no manifest error in the circuit court's finding that Woods's pretrial statement was voluntary, knowing, and intelligent. *See Moss*, 190 So. 3d at 16-17 (¶30). As a result, we find no abuse of discretion in the circuit court's decision to admit into evidence Woods's statement. *See Fortenberry*, 195 So. 3d at 893 (¶11). Thus, this assignment of error lacks merit.

## II. Whether the circuit court erred by overruling the defense's objection to part of Investigator Sciple's testimony.

¶20. Woods also asserts that the circuit court erred by overruling the defense's objection to a statement Investigator Sciple made during his trial testimony. As previously stated, we review the circuit court's decision to admit or exclude evidence for abuse of discretion. *Fortenberry*, 195 So. 3d at 893 (¶11).

¶21. On direct examination, Investigator Sciple testified that Woods told him during their interview that she entered Triplett's house through a side door and that she had not bled inside Triplett's home. Although he initially believed Woods's statement, Investigator Sciple testified that he later changed his mind because he had obtained evidence that Woods had bled inside Triplett's home. The defense objected and asked the circuit court to strike Investigator Sciple's statement from the record. However, the circuit court overruled the objection.

¶22. On appeal, Woods contends that Rule 602 of the Mississippi Rules of Evidence

9

requires a nonexpert witness's testimony to be based on personal knowledge rather than mere opinion. She further asserts that Investigator Sciple's trial statement was not based on personal knowledge but rather on the Mississippi Crime Laboratory's analysis matching her DNA to the blood found in Triplett's home. As a result, Woods argues that the circuit court erred by overruling the defense's objection and its request to strike Investigator Sciple's statement from the record.

¶23. Despite Woods's claims on appeal, the record fails to reflect that Investigator Sciple ever testified to a matter about which he lacked personal knowledge. The record reflects Investigator Sciple's testimony that he personally collected DNA from Woods and Goodin, and along with the blood found inside Triplett's home, he sent the samples to the Mississippi Crime Laboratory for analysis. The record further reflects Investigator Sciple's testimony that he received the results of the analysis back from the Mississippi Crime Laboratory. However, Investigator Sciple neither revealed nor testified to the actual results of the DNA analysis. Instead, he merely stated that, due to evidence he now had, he no longer believed Woods's pretrial statement that she did not bleed inside Triplett's home.

¶24. Upon review, we find that Investigator Sciple's testimony complied with Rule 602 since he only testified to subject matters about which he possessed personal knowledge. We therefore find no abuse of discretion in the circuit court's refusal to strike Investigator Sciple's trial statement from the record. As a result, this assignment of error lacks merit.

¶25. **THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $2,000 IS AFFIRMED. ALL COSTS OF**

**THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**